IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and CHARLES A. WHOBREY, as Trustee, | ) ) ) ) ) ) ) | Case No. 26-cv-01595 |
| *Plaintiffs,* | ) ) ) | Judge |
| v. | ) ) ) | Magistrate Judge |
| LA KING TRUCKING INC., an Ohio corporation; and KALE TRUCKING INC., an Ohio corporation, | ) ) ) ) ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund, and Charles A. Whobrey, as trustee, allege as follows:

### JURISDICTION AND VENUE

1. This is a suit to recover employer contributions owed to the Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and the Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health Fund," and collectively with the Pension Fund, the "Funds") by Defendants in accordance with the applicable collective bargaining agreements and participation agreement and the Funds' Trust Agreements (the "Trust Agreements").

2. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et seq.

3. This Court has jurisdiction over this action under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and under section 301(a) of LMRA, 29 U.S.C. § 185(c).

4. Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Funds are "employee benefit plans" as that term is defined in ERISA and are administered at their principal place of business in Chicago, Illinois. Venue is also proper in this Court under section 301(a) of LMRA, 29 U.S.C. § 185(a). Venue is also proper in this Court pursuant to the forum selection clauses contained in the Trust Agreements, which designate this district as the appropriate forum for lawsuits to collect unpaid contributions.

## PARTIES

5. The Pension Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

6. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

7. The Health Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

8. The Health Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions

affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Health Fund and paying the administrative expenses of the Health Fund.

9. Plaintiff Charles A. Whobrey is a trustee and "fiduciary" of the Funds as that term is defined in ERISA. Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Charles A. Whobrey is authorized to bring this action on behalf of the Funds and their participants and beneficiaries in his capacity as a trustee and fiduciary.

10. Defendant La King Trucking Inc. ("La King") is a corporation organized under the laws of the State of Ohio. La King is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

11. Defendant KALE Trucking Inc. ("Kale") is a corporation organized under the laws of the state of Ohio. Kale is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND INFORMATION

12. Local Union No. 908 ("Local 908") of the IBT is a labor organization which represents, for the purpose of collective bargaining, certain employees of La King and employees of other employers in industries affecting interstate commerce.

13. During all relevant times, La King and Local 908 have been parties to collective bargaining agreements pursuant to which La King has been required to make contributions to the Funds on behalf of certain of its covered employees (the "CBAs").

14. During all relevant times, La King and Local 908 have also been parties to a participation agreement pursuant to which La King has been required to make contributions to the Funds on behalf of certain of its covered employees (the "Participation Agreement").

15. In the Participation Agreement, La King agreed to be bound by the terms of the Trust Agreements and all rules and regulations promulgated by the Trustees thereunder.

16. Under the Trust Agreements, La King was required to "remit continuing and prompt Employer Contributions to the [Funds] as required by the applicable collective bargaining agreement [or] participation agreement ... ."

17. Article XIV, Section 4 of the Pension Fund Trust Agreement provides that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized interest rate of 7.5% (whichever is greater). ... Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

18. Similarly, Article XI, Section 4 of the Health Fund's Trust Agreement provides:

>Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as are permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized rate of 7.5% (whichever is greater). Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

19. The Funds rely upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Funds bill the employers for contributions.

20. Article XI, Section 11 of the Health Fund Trust Agreement and Article XIV, Section 12 of the Pension Fund Trust Agreement provide as follows:

>An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required

to collect additional billings that result from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

## STATUTORY AUTHORITY

21. Section 515 of ERISA, 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

22. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## COUNT I
## AGAINST LA KING FOR DELINQUENT CONTRIBUTIONS

23. Plaintiffs hereby reallege paragraphs 1 through 22 as though fully set forth herein.

24. Pursuant to the Trust Agreements, the Funds are permitted to audit work history records of participating employers in order to verify the accuracy and completeness of the reported employee work history submitted as part of the self-reporting system.

25. The Funds audited La King's records to verify the accuracy and completeness of employee work history reported to the Funds by La King.

26. The audit revealed that La King had failed to accurately report the work history of its covered employees in that, during the approximate period of January 1, 2012 through December 31, 2016, certain of La King's employees performed work covered by the CBAs, but La King did not report the work history of those employees to the Funds (and did not pay contributions to the Funds on those employees' behalf).

27. As a result of the conduct set forth in paragraph 26, La King failed to pay all of the contributions owed to the Funds for the approximate period of January 1, 2012 through December 31, 2016.

28. La King breached the provisions of ERISA, the CBAs, the Participation Agreement, and the Trust Agreement by failing to pay all of the contributions (and interest due thereon) owed to the Funds for the approximate period of January 1, 2012 through December 31, 2016.

29. La King owes the Pension Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the approximate period of January 1, 2012 through December 31, 2016, as a result of the conduct set forth in paragraph 28.

30. La King owes the Health Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the approximate period of January 1, 2012 through December 31, 2016, as a result of the conduct set forth in paragraph 28.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against La King and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), for:

    (i) all unpaid contributions owed to the Funds by La King;

    (ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

    (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

    (iv) attorneys' fees and costs; and

    (v) audit fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) Such further or different relief as this Court may deem proper and just.

## COUNT II
## AGAINST LA KING AND KALE FOR DELINQUENT
## CONTRIBUTIONS UNDER THE SINGLE EMPLOYER THEORY OF LIABILITY

31. Plaintiffs hereby reallege paragraphs 1 through 30 as though fully set forth herein.

32. During the period of no later than June 8, 2016 through at least December 27, 2025, La King and Kale had common ownership.

33. During the period of no later than June 8, 2016 through at least December 27, 2025, La King and Kale had common management in that Russell J. King, the president of La King, operated as the day-to-day manager and made all or substantially all business decisions for both La King and Kale, either personally or through a proxy.

34. During the period of no later than June 8, 2016 through at least December 27, 2025, La King and Kale had centralized control of labor relations in that Mr. King made all decisions respecting the hiring and firing of employees of La King and Kale and conducted union negotiations on behalf of La King.

35. During the period of no later than June 8, 2016 through at least December 27, 2025, La King and Kale operated from the same locations, including 1516 Findlay Road in Lima, Ohio, and 434 Matzinger Road in Toledo, Ohio.

36. During the period of no later than June 8, 2016 through at least December 27, 2025, La King and Kale had a common business purpose and performed similar work.

37. For example, during the period of no later than June 8, 2016 through at least December 27, 2025, La King and Kale both operated as subcontractors for the same non-party corporation, Quality Carriers Inc. ("Quality"). Kale received work assignments from Quality, and Kale decided which assignments to assign to itself and which assignments to assign to La King.

38. During the period of no later than June 8, 2016 through at least December 27, 2025, La King and Kale shared equipment, including trucks.

39. Given the above allegations in paragraphs 32 through 38, La King and Kale constituted a single employer during the period of no later than June 8, 2016 through at least December 27, 2025.

40. Because La King and Kale constituted a single employer, Kale—from no later than June 8, 2016 through at least December 27, 2025—was bound by and obligated to comply with the CBAs, the Participation Agreement, and the Trust Agreements to which La King was bound.

41. Because La King and Kale constituted a single employer, they are jointly and severally liable to the Funds for the contributions (and interest due thereon) owed to the Funds on behalf of the employees of La King and Kale who performed work covered by the CBAs and Participation Agreement.

42. La King and Kale breached the provisions of ERISA, the CBAs, the Participation Agreement, and the Trust Agreements by failing to pay all of the contributions (and interest due thereon) owed to the Funds on behalf of the employees of La King and Kale who performed work covered by the CBAs and Participation Agreement.

43. La King and Kale owe the Pension Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 42.

44. La King and Kale owe the Health Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 42.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against La King and Kale, jointly and severally, and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), for:

(i) all unpaid contributions owed to the Funds by La King and Kale as a result of the fact that La King and Kale are a single employer;

(ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

(iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

(iv) attorneys' fees and costs; and

(v) audit fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) Such further or different relief as this Court may deem proper and just.

## COUNT III
## AGAINST LA KING AND KALE FOR DELINQUENT
## CONTRIBUTIONS UNDER THE ALTER EGO THEORY OF LIABILITY

45. Plaintiffs hereby reallege paragraphs 1 through 44 as though fully set forth herein.

46. Upon information and belief, during the period of no later than June 8, 2016 through at least December 27, 2025, La King has transferred work covered by the CBAs and Participation

Agreement with Local 908 to Kale including (but not limited to) by assigning favorable trucking routes to Kale employees instead of La King employees and by hiring new Kale employees to replace retiring La King employees instead of hiring new La King employees.

47. Upon information and belief, one of the reasons (if not the only reason) that La King transferred work covered by the CBAs and Participation Agreement to Kale was to avoid the obligations under the CBAs and Participation Agreement, including, without limitation, the obligation to pay contributions to the Funds.

48. By virtue of the aforementioned conduct set forth in paragraphs 32 through 38 and 46 through 47, La King and Kale were alter egos during the period of no later than June 8, 2016 through at least December 27, 2025.

49. Because La King and Kale were alter egos, Kale was bound by and obligated to comply with the CBAs, the Participation Agreement, and the Trust Agreements to which La King was bound.

50. Because La King and Kale constituted alter egos, they are jointly and severally liable to the Funds for the contributions (and interest due thereon) owed to the Funds on behalf of the employees of La King and Kale who performed work covered by the CBAs and Participation Agreement.

51. La King and Kale breached the provisions of ERISA, the CBAs, the Participation Agreement, and the Trust Agreements by failing to pay all of the contributions (and interest due thereon) owed to the Funds on behalf of the employees of La King and Kale who performed work covered by the CBAs and Participation Agreement.

52. La King and Kale owe the Pension Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the

period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 51.

53. La King and Kale owe the Health Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 51.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against La King and Kale, jointly and severally, and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

    (i) all unpaid contributions owed to the Funds by La King and Kale as a result of the fact that La King and Kale are alter egos of each other;

    (ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

    (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

    (iv) attorneys' fees and costs; and

    (v) audit fees and costs;

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which

the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

  (c)  For such further or different relief as this Court may deem proper and just.

## COUNT IV
## AGAINST LA KING FOR VIOLATION OF ADVERSE SELECTION RULE

  54.  Plaintiffs hereby reallege paragraphs 1 through 53 as though fully set forth herein.

  55.  The Participation Agreement provides that "[t]he Employer acknowledges that it is aware of the Fund(s)' adverse selection rules (including Special Bulletin 90-7) and agrees that while this Agreement remains in effect, it will not enter into any agreement or engage in any practice that violates the adverse selection rules."

  56.  Article III, Section 8 of the Pension Fund's Trust Agreement provides:

> The remedy of the termination of an Employer's participation set forth in Article III, Section 1 and Article IV, Section 20 is not the Fund's exclusive remedy in the event of a violation of the Fund's adverse selection rule. The Fund shall also be entitled to collect additional Employer Contributions from an Employer that violates the Fund's adverse selection rule in an amount equal to the Employer Contributions that would have been paid to the Fund but for the adverse selection rule violation. The Employer Contributions paid under this section shall be treated as contributions required to be made for the purposes of computing withdrawal liability under 29 U.S.C. §§ 1381-1451 and contribution base units on any contributions paid under this section shall be calculated by dividing the amount paid under this section by the applicable contribution rate.

  57.  Similarly, Article III, Section 8 of the Health Fund's Trust Agreement provides:

> The remedy of the termination of an Employer's participation set forth in Article III, Section 1 and Article IV, Section 20 is not the Fund's exclusive remedy in the event of a violation of the Fund's adverse selection rule. The Fund shall also be entitled to collect additional Employer Contributions from an Employer that violates the Fund's adverse selection rule in an amount equal to the Employer Contributions that would have been paid to the Fund but for the adverse selection rule violation

58. In the event the Court determines that Kale is neither an alter ego of La King nor a single employer with La King, the transfer or assignment of work of La King to Kale nonetheless violated the Funds' adverse selection rules, and the Funds are entitled to additional contributions based upon the covered work transferred by La King to Kale (i.e., the work that was covered by the CBAs and Participation Agreements).

59. La King owes the Pension Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 58.

60. La King owes the Health Fund unpaid contributions (the precise amount of which is currently unknown with specificity but will be determined through discovery) for the period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 58.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against La King and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreement for:

    (i) all contributions that would have been paid to the Funds if La King had not violated the Funds' adverse selection rules;

    (ii) interest on the unpaid contributions, computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

  (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

  (iv) attorneys' fees and costs; and

  (v) audit fees and costs;

 (b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

 (c) Such further or different relief as this Court may deem proper and just.

**COUNT V
AGAINST LA KING FOR BREACH OF THE
<u>COLLECTIVE BARGAINING AGREEMENTS</u>**

61. Plaintiffs hereby reallege paragraphs 1 through 60 as though fully set forth herein.

62. Article 36, Section 1 of the CBAs between La King and Local 908 provides that La King:

> agrees that no operation, work or services of any kind, nature or type covered by, or presently performed or hereafter assigned to the Collective Bargaining Unit by the Signatory Employer will be subcontracted, transferred, leased, diverted, assigned or conveyed in full or in part (hereinafter referred to as "divert", or "subcontract"), by the Employer to any other plant, business, person, or non-unit employees, or to any other mode of operation, unless specifically provided and permitted in this Agreement.

63. Article 36, Section 1 of the CBAs between La King and Local 908 further provides that "the Signatory Employer agrees that it will not, as hereinafter set forth, subcontract or divert the work presently performed by, or hereafter assigned to, its employees to other business entities owned and/or controlled by the Signatory Employer, or its parent, subsidiaries or affiliates."

64. Article 36, Section 2 of the CBAs between La King and Local 908 provides that:

> [T]he parties agree that it shall be presumed that a diversion of work in violation of this Agreement occurs when work presently and regularly performed by, or hereafter assigned to, employees of the Signatory Employer has been lost and the lost work is being controlled by the Signatory Employer, its parent, or subsidiary within sixty (60) days of the loss of work.

64. In the event the Court determines that Kale is neither a single employer nor an alter ego of La King, the transfer of work by La King to Kale nonetheless violates Article 36 of the CBAs.

65. The Funds are third-party beneficiaries of the CBAs between La King and Local 908.

66. The Funds have been damaged by La King's breach of its obligations under the CBAs through La King's transfer of covered work (i.e., work that was covered by the CBAs and Participation Agreements) to Kale during the period of no later than June 8, 2016 through at least December 27, 2025.

67. La King owes the Pension Fund unpaid contributions (the precise amount of which are currently unknown with specificity but will be determined through discovery) for the period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 66.

68. La King owes the Health Fund unpaid contributions (the precise amount of which are currently unknown with specificity but will be determined through discovery) for the period of no later than June 8, 2016 through at least December 27, 2025, as a result of the conduct set forth in paragraph 66.

**WHEREFORE**, the Plaintiffs request the following relief:

  (a)  A judgment against La King and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

    (i)  all contributions that would have been paid to the Funds but for La King's breaches of the CBAs;

    (ii)  interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

    (iii)  an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

    (iv)  attorney's fees and costs; and

    (v)  audit fees and costs.

  (b)  Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

  (c)  For such further or different relief as this Court may deem proper and just.

-19-

                Respectfully submitted,

                */s/ Sterling Coleman-Selby*
                Sterling Coleman-Selby (ARDC # 6343160)
                Central States Funds Law Department
                8647 W. Higgins Road, 8th Floor
                Chicago, IL 60631
                (847) 939-2146
                scoleman@centralstatesfunds.org
                ATTORNEY FOR PLAINTIFFS

February 12, 2026